M. F. Comer Bridge & Foundation Co. v. Edward H. Sheeran.

161 So. 60.
Opinion Filed September 13, 1935.
On Rehearing April 10, 1935.

*Kurtz & Reed,* for Plaintiff in Error;

*Patterson & Knight* and *W. Clinton Green,* for Defendant in Error.

ELLIS, J.—Edward H. Sheeran recovered judgment in the Circuit Court for Dade County against M. F. Comer Bridge & Foundation Company, a corporation, in the sum of ten thousand dollars in an action for damages for personal injuries.

The defendant in the case seeks to reverse the judgment in this Court on writ of error.

In November, 1929, a bridge was under construction near Indian Creek and Forty-first Street in Miami Beach, Dade County, Florida. The Comer Bridge & Foundation Company had the contract for the construction of the bridge. Edward H. Sheeran was an employee of the Company as superintendent in charge of the construction work on this particular job. He had been on that work about two months and the structure was about half completed.

An abutment to the bridge was under construction at the time of the accident. A cofferdam had been constructed and the workmen were removing the middle set of timbers from it. For that purpose a derrick was used, operated by a three drum hoisting engine and all resting upon a barge which was anchored to the southward on the cofferdam.

Mr. Sheeran stood upon the railing of the cofferdam; that is to say, upon the heavy timbers lying along the edge of the cofferdam placed there to prevent it from collapsing from the outside water pressure. In that position he directed the movement of the derrick which was operated by another employee on the barge. At a signal from Mr. Sheeran the arm of the derrick would be swung by the operator of the machine over the cofferdam, a cable with hooks would be dropped into the cofferdam, in which an-

other employee, also under Mr. Sheeran's direction, was stationed whose duty it was to attach the hooks to the timber. Then upon a signal from Mr. Sheeran the timber would be slowly lifted and swung by the derrick to a point some distance from the bridge and to the west of the barge as Mr. Sheeran directed.

That process of removing the timbers from the cofferdam was being executed. The derrick on Mr. Sheeran's signal had swung over the cofferdam, the cable had been dropped and fastened by the workman to the particular timber, the signal had been given by Mr. Sheeran to remove it and it had been lifted clear of the cofferdam and swung around to the point where it was to have been released and deposited on the ground. Mr. Sheeran then turned his back to the derrick boom and was leaning forward over the cofferdam to instruct the workman stationed in there as to the next piece of timber to be removed, but due to some mishap the timber, which weighed about three hundred and fifty pounds and which had been lifted from the cofferdam, was not released from the cable of the derrick's boom, but was swung back again toward the cofferdam. The heavy timber swinging from the chain of the derrick struck Sheeran in the back, hurling him forward into the cofferdam, where he fell upon irons and timber constituting part of the structure, causing serious and painful bodily injuries to himself.

He brought an action for damages against the Corporation, his employer. The declaration contains three counts. The two first charge the defendant with the negligent operation of the hoisting machine. The third count as amended presents the plaintiff's case, if any at all exists. It alleges in substance that it was the duty of the defendant to supply a hoisting machine or derrick properly equipped

and suitable for the purpose to which it was put; that the defendant failed in that duty in that a brake contrivance with which the machine was equipped was permitted to get in bad condition; that the brake had some relation to the function of releasing the grappling hooks so that when the brake by reason of its defective condition stuck on the drum around and from which it was alternately wound and unwound, the grappling hooks would not be released and the load then being carried on the cable would not be discharged or deposited where it was intended to be, so on the occasion on which Sheeran was injured the brake, due to its defective condition, stuck, the timber, which was then swinging from the cable, was not released but suspended at the cable's end, swung back to the cofferdam, striking Mr. 'Sheeran and producing the injuries described in the declaration.

The transcript discloses that certain amended and additional pleas presented the defense to the plaintiff's alleged cause of action. The first amended plea was the plea of not guilty and the second amended plea tendered the issue of contributory negligence. It is averred that the timber was being removed under orders and directions of the plaintiff as superintendent in charge of the work of construction and that he failed to observe due care for his own safety by watching the operations of the machine in the process of removing the timber.

The additional pleas were interposed to the third amended count. The sixth additional plea to that count was not guilty. The third plea set up the defense that the plaintiff's failure to inspect the machinery as his duties required of him was the proximate cause of his injury; the fourth tendered the defense of assumption of risk from the negligence of a co-employee, the co-employee being the person

in charge of and operating the hoisting machine. The fifth plea averred that the plaintiff was defendant's vice-principal, .that all persons on the work and all activities were under the direction and control of the plaintiff as supervisor and manager and plaintiff's injury was due to his own inefficient and careless management. The seventh plea tendered the same defense to the amended third count as the second amended plea tendered to the first and second counts of the declaration. Demurrers to the pleas were overruled and the cause went to trial upon the issues tendered by the pleas.

Upon the conclusion of the testimony the court of its own motion withdrew plea numbered five from consideration by the jury, on the ground that it was inapplicable and that there was no evidence to support it. That plea set up the defense that the plaintiff was the defendant's vice-principal; that all the employees engaged on the work and all machinery used were under the direct management, supervision and control of the plaintiff and that the plaintiff carelessly neglected to properly direct the activities of the persons working under him, particularly the operator of the derrick, and such carelessness on the plaintiff's part in the discharge of his duties was the proximate cause of his injury.

That order was made the basis of the fifth assignment of error.

The question is discussed in the brief on the theory that a superintendent in charge of a work upon whom devolves the duty of controlling and directing the activities of all employees engaged with him and who had control of the management of the machinery used in the operations is precluded from recovering damages from his employer in case of injury resulting to him from his failure to give

proper instruction to the employee under. him or from no efficient inspection of the condition of the machinery producing the injury and being used on that work.

That that principle of law is sound is hardly open to discussion. As superintendent in charge of the particular work, he was supposed to have known the mechanism of the instrument used to remove the timber from the cofferdam and understand its operation. If he carelessly permitted a defective or inefficient piece of machinery to be used and by his signals directing its use actually employed it his negligence cannot be ascribed to his employer when he is the injured person. See Atlantic Coast Line R. Co. v. Ryland, 50 Fla. 190, 40 South. Rep. 24; Long v. Pughsley, 80 Fla. 278, 85 South Rep. 664.

There was evidence in the record tending to show that Sheeran was the superintendent in charge of the work. Such was his own testimony and that statement was confirmed by the testimony of an official of the corporation which employed him. It was his duty to direct the work and equipment. It was attempted to be shown that he had full charge of the equipment, but the question was stricken on objection by plaintiff's counsel without any statement of the ground of the objection. The witness, LeSeur, for the plaintiff, had testified that it was his duty to inspect the machinery and keep it in repair and that he was under his "own direction." The question stricken sought to elicit information from the vice-president of the Corporation in positive contradiction of the testimony of LeSeur.

Obviously if LeSuer had the complete management and control of the machine and so carelessly and negligently disregarded his duty to keep it in suitable condition to do the work required of it as he seemed to be so willing to

swear and thus acknowledge his own unfaithfulness and incompetence as a servant of the Company, then the cause of the accident, if indeed the sticking of the brake caused it, could not be attributed to Sheeran, but if on the other hand Sheeran had full and complete control and management of the machine on that work it was his duty to know whether in its then condition it was suitable for the work required of it, and if such being his duty he exhibited the same degree of careless and negligent inattention to it as LeSuer seemed to admit marked the standard of his efficiency why then, of course, Sheeran could not recover on the cause stated by the third count of the declaration.

The order withdrawing the fifth plea from consideration by the jury was harmful error and operated greatly to the damage of the defendant.

The mechanism of the hoisting machine was not clearly explained. It is not at all apparent from the evidence why the sticking of the brake on the No. 2 drum should cause the boom with its load swinging from the end of a cable to swing back in a different arc of transit toward the point where the load was taken on without some assistance from the unclear Mr. Canady from whose testimony he seemed to desire it to be inferred that a machine like that had a mysterious and erratic way of performing when a brake on one of the drums which he chose to use was badly worn. Why he chose to use that particular drum and did not utilize the drum for controlling the boom when he saw that the stick of timber was not going to be released is not explained by him. It does not follow that by any law of mechanics the boom with its load of timber would swing back on a different arc, or swing back at all for that matter, upon the failure of the timber to be deposited at the point to which the operator of the machine directed it without

some assistance or impetus given to it either by the person operating the machine or the lilt of the barge on which the machinery was placed.

A full explanation of the matter might amount to more than a mild adverse criticism of Mr. Canady's efficiency, which his meager explanation and semi-technical phrases, such as "boomed down my boom," were not entirely sufficient to establish.

If the accident to Mr. Sheeran was in fact due to the clumsiness or inefficiency or even malice of Canady, the engineer in charge of operating the derrick, it should be made to appear with a reasonable degree of clearness. It cannot be assumed that it was his carelessness which caused the accident, nor can it be assumed that it was caused by the sticking of the brake on drum No. 2 which if it did in some way not explained cause the timber to remain suspended in the air from the end of a cable over the spot where it was intended to be deposited did not force the boom to carry the load back to the point where it was taken on.

It is not a case of *res ipsa loquitur*. A worn brake, a defective cable drum on a derrick machine, does not of itself account for the somewhat unusual, not to say mysterious, behavior of the derrick boom. Mr. Canady's statement that the "brake just wore down until it just got to stick against the metal—that is the only thing I can see," seems not to be quite sufficient as an explanation of why the boom cable on failing to deposit the timber on the ground should swing back to the point where the timber was taken on, or why the engineer who could control the boom by his machinery permitted it to swing back.

If he was guilty of either carelessness or malice and the accident proceeded from either cause developed after the

machine failed to deposit the timber on the land the plaintiff might recover on either the first or second count of the declaration, but there is no evidence to support any such theory.

There is a lack of evidence tending to establish a casual relation between the worn brake and the accident which is necessary to exist in order to maintain the case on the third count even if the jury should believe that the self-condemned Mr. LeSuer and not Mr. Sheeran was in complete control and management of the equipment, while no recovery could be sustained under the first and second counts in the absence of a showing that Mr. Canady unskillfully or carelessly managed the machinery.

The doctrine of the last clear chance might be considered as possibly applicable because Mr. Canady after realizing that the timber could be lowered to the ground, but remained swinging from the end of the boom might have by proper manipulation of his machine prevented the boom from swinging back toward the point where it originally took on the load and thus avoided the accident, which if he failed to do might have established the charge of careless manipulation of the machinery.

For the error committed by the trial court in eliminating the fifth plea the judgment is reversed and a new trial ordered.

Reversed.

TERRELL, BROWN and BUFORD, J. J., concur.

DAVIS, C. J., and WHITFIELD, J., dissent.

## ON PETITION FOR REHEARING.

PER CURIAM.—In this cause the Court was divided in its original opinion filed herein on September 13, 1934, four Justices favoring reversal and two Justices favoring affirm-

ance. By special leave of Court first had and obtained, oral argument was allowed before the Court *en banc* on defendant in error's petition for a. rehearing and such oral argument was duly had herein.

After hearing arguments of counsel for and against the granting of the petition for a rehearing herein, Mr. Justice ELLIS, Mr. Justice TERRELL and Mr. Justice BROWN are of the opinion that the petition should be denied. Mr. Chief Justice WHITFIELD, Mr. Justice BUFORD, and Mr. Justice DAVIS are of the opinion that the petition for rehearing should be granted and the judgment thereupon affirmed.

There being no prospect of a change in the personnel of the Court and there likewise being no prospect of a change in the views of the members of this Court as now constituted, the original judgment of reversal entered herein on September 13, 1934, must be allowed to stand and the cause remanded to the court below with directions to award a new trial and have further proceedings therein as heretofore by the judgment of this Court directed to be had. Let the mandate of this Court be issued accordingly.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

BROWN, J.—As I see it, our original judgment of reversal should be adhered to for two reasons.

First, the trial court erred in overruling the demurrer to the first and second counts. I do not see that this error was cured by reason of the fact that the third count as amended stated a good cause of action. Admittedly, as the majority of the Court hold, the first and second counts each fail to state a good cause of action. Certain essential allegations were omitted from each count, without which the liability of the defendant for the injury complained of was not shown. The jury's verdict may have been based on these defective counts. We have held that if a declaration omits

to allege any substantive fact which is essential to a right of action, and which is not implied in, or inferrable from, the finding of those which are alleged, a verdict for plaintiff does not cure the defect. Crawford v. Feder, 34 Fla. 397, 16 So. 287; Fla. Cent., etc., R. Co. v. Ashmore, 43 Fla. 272, 32 So. 832; 49 C. J. 877.

Secondly, as held in the original opinion the Court below erred in withdrawing from the consideration of the jury the defense set up in the defendant's fifth plea. The third plea was in some respects similar to the fifth plea, but the latter plea was more comprehensive in its allegations, and, under the evidence, the issues of fact thus presented should have been submitted to the jury for their determination, even though it be admitted that the evidence was in conflict and that a verdict against the defendant on the fifth plea might have been sustained.

We would not be justified in holding that these errors were harmless to the defendant.

ELLIS, J., concurs.

BUFORD, J.—This case is before us after rehearing granted, pursuant to which reargument has been heard and further briefs considered, all of which followed the filing of opinion herein on September 13, 1934.

The history of the case is outline in the original opinion.

A majority of the Court are of the opinion that the evidence was sufficient to warrant recovery and to sustain the verdict under the issues presented by the pleadings and upon which the case was tried. It is contended, however, that reversible error was committed by the trial court in overruling defendant's demurrer to the first and second counts of plaintiff's declaration. The declaration was in three counts and each count attempted to state a cause of action based upon the same alleged wrongful act and for the same

injury inflicted and received. The First and Second Counts were both defective in that they did not contain sufficient allegations to show either a duty upon the part of the defendant to furnish the plaintiff a safe place or safe appliances with which to accomplish the work which he was doing, or that the injury was willfully and maliciously inflicted. In the Third Count of the declaration the allegations were sufficient to show a duty upon the part of the defendant toward the plaintiff in regard to the furnishing of safe appliances with which to perform the work which was being performed by the plaintiff.

It was error to overrule the demurrer to the First and Second Counts of the declaration, but inasmuch as the verdict rendered was a general verdict and the Third Count of the declaration was a good and sufficient count, the error committed in overruling the demurrer to the First and Second Counts of the declaration became harmless. All the evidence admitted was admissible under the Third Count of the declaration. All of the charges given were applicable to the Third Count of the declaration, and, in fact, the whole case was tried upon the allegations of the Third Count of the declaration and the pleas applicable thereto. And so it is that should we order judgment entered for the defendant on the First and Second Counts of the declaration, there would still appear no error as to the judgment for the plaintiff on the Third Count of the declaration and the judgment should stand.

It was held in the original opinion herein that the judgment should be reversed because the Court, of its own motion, struck the fifth plea interposed by the defendant. On further consideration, a majority of the Court are of the opinion that no reversible error occurred by the action complained of. Everything that was alleged in the fifth plea

was within the general issue of not guilty, or within the issues presented by the plea of contributory negligence. Pleas presenting these issues were interposed and presented issues upon which the case was tried.

It has been strenuously contended that the judgment should be reversed because it is alleged that the record shows that the plaintiff was superintendent in charge of the construction work and that he had control over all the machinery and implements used in the construction where he was injured. Our conclusion is that this contention is not tenable. The record not only fails to show this state of facts, but it shows conclusively that the plaintiff was injured by reason of the sticking of the brake on a drum; that the brake stuck because of its defective condition and that when it stuck it caused the machine to fail to function as it should have, with the result that a timber which was being moved was suspended in the air and swung back toward the point from which it had been carried on a cable constituting a part of the hoisting machinery, thereby striking and injuring the plaintiff.

The record shows that this hoisting machine which was being used to remove timber from the cofferdam was under the supervision and direction of the plaintiff only to the extent that he directed the operator of the machine as to what movements should be made with the hoisting apparatus just as he might direct a locomotive engineer as to where he should place cars or where he should stop the movement of cars and in what direction he should start the movement of cars. The record shows that he was not responsible either to the employees or to the owners for the condition of the machinery constituting the hoisting equipment. Other people were in charge of that representing the owners who were the defendants in this case.

556

The record shows that that machinery was sent on the job in the condition in which it proved to be for the purpose of being used in the construction at the direction of the plaintiff. But, it was neither selected by the plaintiff for that work nor was he required to put it in condition for that work.

We think the judgment should be affirmed.

WHITFIELD, C. J., and DAVIS, J., concur.