ANNA C. KIRKLAND v. CITY OF GAINESVILLE.

166 So. 460.

Division A.

Opinion Filed February 6, 1936.

Rehearing Denied March 23, 1936.

*Fielding & Duncan* and *J. C. Adkins,* for Plaintiff in Error;

*Baxter, Clayton & Watson,* for Defendant in Error.

WHITFIELD, C. J.—For a decision herein on a former writ of error see City of Gainesville v. Kirkland, 116 Fla. 319, 156 So. 601.

The declaration alleges that the defendant city failed to keep its electric light pole in a safe condition, and failed to furnish plaintiff's decedent a safe place within which to work; and, on the contrary, the said electric light pole was unsafe, unsound, cracked, split, sappy and/or rotten, and because thereof, and on account of the negligence of the defendant in the said matter, the plaintiff's decedent fell from the said electric light pole, and in falling he was then and there killed. Decedent's widow brought this action for damages.

The pleas were: (1) not guilty; (2) "that the plaintiff's intestate, the said H. G. Kirkland, mentioned in said declaration, was for ten years or more immediately preceding his death employed by the defendant as superintendent of the Electric Light & Water Department of this city; and as such superintendent it was his duty to see that all electric light poles in use by the city were in good condition and repair and the defendant further avers that the said H. G. Kirkland well knew the condition of the pole which he had climbed and whether it was 'unsafe,' 'unsound,' 'cracked,' 'split,' 'sappy' and/or 'rotten,' or in any manner dangerous, and that it was his duty to so know the condition of the said pole, and so knowing the condition of said pole, as it was his duty to do, he negligently and carelessly failed to use ordinary care and caution, and by reason of such failure and negligence on his part the alleged injury was caused.

Wherefore the defendant says that the plaintiff ought not to have and maintain her aforesaid action."

On November 28, 1934, a verdict for $15,000.00 was returned and judgment for the plaintiff in that amount was rendered.

On November 30, 1934, during the same term of the court, on motion of the defendant, the court ordered that the time for the making and presentation of a motion for a new trial be extended for a period of ten days. Section 4498 (2811) C. G. L.

On December 4, 1934, during the same term of the court, the defendant submitted to the court its motion for a new trial containing nine grounds including charges given and alleged errors in submitting the cause to the jury and in the amount of the verdict.

On December 11, 1934, during the same term of the court, the plaintiff moved to strike the motion for new trial, one of the grounds being that neither the plaintiff nor her attorneys have been served "with three (3) days' notice of the time and place that the same will be presented," as required by the statute. Section 4498 (2811) C. G. L. The court made the following order on the motion to strike:

"On November 28th, 1934, a verdict was duly rendered in the above cause against the defendant and in the favor of the plaintiff. After rendition of said verdict, the defendant gave notice in open court of intention to file a motion for a new trial, and thereupon applied to the court for an extension of time within which to file said motion for a new trial. On November 30th, 1934, the court entered an order extending the time for the making and presentation of such motion for new trial, not to exceed ten (10) days from the entry of such order. On December 4, 1934, before the expiration of the time stated in the order of the

court extending the time for the filing of a motion for a new trial, defendant presented its motion for a new trial to the court, at the same time requesting the court to set a date for the hearing of said motion before the expiration of the time provided by law. Thereafter, the parties plaintiff and defendant, by their counsel, orally agreed in the presence of the court that said motion for a new trial should be heard on December 11, 1934, being a date before the expiration of the time provided by law for the making and presentation of such motion.

"The said motion for a new trial coming on to be heard before the court on said date, and counsel for the plaintiff and defendant being present, and their argument being heard by the court on said motion, counsel for plaintiff objected to the hearing of said motion on the ground that neither the plaintiff nor her counsel had been served with three (3) days' notice of the time and place that the said motion for new trial would be presented and heard.

"But the court being of the opinion that it is of the hearing of the motion for a new trial, where the time for the making and presentation thereof has been extended by order of court, that notice is required, and that the right to insist upon the giving of such notice has been waived by counsel for plaintiff orally agreeing before the court to argue said motion for new trial on December 11, 1934; and the court being advised of its judgment in the premises; it is, upon consideration thereof,

"ORDERED AND ADJUDGED that said motion of the plaintiff to strike from the files of this case the said motion for a new trial be, and the same is hereby denied."

The motion for new trial was granted December 14, 1934, after arguments by counsel for both parties.

On December 22, 1934, the following supplemental order was entered by the court:

"This cause coming on this day to be heard during the same term of court, upon application of counsel for plaintiff for a supplemental order stating with more particularity the grounds upon which the motion for a new trial heretofore filed in this cause was granted, and for the entry of said supplemental order *nunc pro tunc* as of December 14, A. D. 1934, and counsel for the defendant interposing no objection to the entry of such supplementary order, and it appearing to the court that the motion for new trial in said cause came on to be heard on December 11, A. D. 1934, after due notice to plaintiff's attorneys, and that the same was submitted and argued and that upon consideration thereof the court entered an order granting said motion for a new trial;

"And the court being of the opinion that the underlying question involved is whether, under the Hazardous Occupation Act, there can be recovery for the death of a servant who was entrusted by the master with the duty and responsibility of maintaining a reasonably safe place for himself and others to work upon, and who breached this duty, by reason whereof he was killed;

"And the court being of the opinion that this question must be answered in the negative; and that consequently the verdict is contrary to the law and the manifest weight of the evidence, and that the verdict should be set aside and a new trial awarded, it is, upon consideration thereof,

"ORDERED AND ADJUDGED that said application for a supplemental order in this cause be, and the same is hereby granted; and that the order heretofore entered, in this cause granting the defendant's motion for a new trial be, and the same is hereby supplemented, ratified and confirmed."

In this case the motion for new trial was presented to the trial judge within the time allowed by the order extending the time and thereafter the parties agreed in the presence of the court that *the motion for new trial should be heard at a later day.* In Bishop v. Chillingworth, 120 Fla. 740, 163 Sou. 93, the motion was not shown to have been presented to the judge within the time allowed by the extension order, and opposing counsel merely requested that *a hearing be postponed to a later day.*

There was no error in denying the motion to strike the motion for new trial as made and presented in this case.

The statutes provide that "persons, firms and corporations engaged in * * * generating and selling electricity * * * shall be liable in damages for injuries inflicted upon their agents and employees, and for the death of their agents and employees caused by the negligence of such persons, firms and corporations, their agents and servants, unless such persons, firms and corporations shall make it appear that they, their agents and servants have exercised all ordinary and reasonable care and diligence." There shall be no liability in damages for injuries to agents and employees or for the death of such agents and employees when caused by their own negligence. If the employees or agents injured or killed, and the employers or their agents and employees are both at fault, there may be a recovery, but the damages shall be diminished or increased by the jury in proportion to the amount of default attributed to both. "The doctrine of assumption of risk shall not obtain in any case arising under the provisions of this article, where the injury or death was attributable to the negligence of the employer, his agents or servants." Sections 7058 (4971-7061, 4974) C. G. L.

Damages for the death of a person by the wrongful act

of an individual or a corporation may be recovered by authorized persons where the injured person could have maintained an action for damages for the injury if death had not ensued. In such case the widow of decedent may recover such damages as she "may have sustained by reason of the death of the party killed." Section 7047 (4960), 7048 (4961) C. G. L.

It appears that the defendant city was engaged in the business of generating and selling electricty for profit and that plaintiff's decedent was employed by the city in said business. There is testimony that the defendant's electric light pole was unsound, cracked, split, sappy and rotten as alleged and that the plaintiff's decedent, using spurs in climbing the pole, fell from the pole while working thereon in the line of his duty, receiving fatal injuries. And the testimony afforded a legal predicate for an inference that the unsound and rotten condition of the pole was a result of the defendant's negligence and was a proximate cause of the fatal fall of plaintiff's decedent. This and other matters in evidence as against the plea of not guilty made a *prima facie* case for the recovery of damages for the wrongful death of plaintiff's decedent under the hazardous occupation statute of the State.

The special plea averred that it was the duty of the plaintiff's decedent "to see that all electric light poles in use by the city were in good condition and repair," and that he well knew the condition of the pole and negligently and carelessly failed to use ordinary care and caution and by reason of such failure and negligence the alleged injury was caused, wherefore plaintiff ought not to have and maintain the action. This plea was not proven; and if proven it would not have barred recovery of diminished damages, since negligence of the defendant city as alleged was shown; and

even if the plaintiff's decedent was shown to have had some responsibility with reference to the safety of the poles, and was also shown to have been negligent in the premises, such decedent was an employee of the defendant city and was performing the duty of an employee when fatally injured, and the statute expressly authorizes the recovery of diminished damages in such cases where, as here, it is not shown that the fatal injury was caused by the decedent's own negligence, and it is not shown that the defendant "exercised all ordinary and reasonable care and diligence" in the premises.

The testimony indicates that the pole is now in use as it was when the fatal injury occurred. But the testimony also indicates that the heart of the pole may be sound and sufficient to support the wires while the outer portion of the pole may be sappy, rotten and unsafe for those who climb the pole with spurs in line of duty.

While the legal duty of the defendant city was to exercise due care to provide and maintain reasonably safe line poles for those who climb them in rendering the hazardous service, and an inference of negligence of the city as to such duty may be drawn from evidence of the unsafe condition of a pole being used, yet an inference of negligence of the decedent drawn from the unsafe condition of a pole in use would not bar recovery merely because the decedent had some undefined duty to inspect, maintain and look after the poles. As superintendent of the city's light and water system the decedent was not shown to have been made the *alter ego* of the city; nor was he shown to have been duly charged with and accepted the duty to provide safe poles for employees to work upon. And even if it were so shown, such decedent as superintendent was an employee and was rendering the service of an employee when he was fatally

injured, whose negligence, if any, in the premises would diminish but not bar recovery of damages under the hazardous occupation statute.

This action is under the hazardous occupation statute and negligence of the defendant must appear by direct evidence or by fair inference from facts in evidence. Atlantic Coast Line R. Co. v. Gardner, 77 Fla. 305, 81 So. 473. Negligence of the injured party does not bar but reduces recovery if the employer city was negligent as alleged. Conceding that decedent had some responsibility as to the condition of the pole, his negligence does not bar but it reduces recovery, when the defendant's duty to maintain safe poles could not be avoided by delegation even to the injured party. It does not appear that negligence of the decedent, if any, was the sole cause of his fatal injury.

The legal duty of the city was to exercise care to maintain the poles of its system in a reasonably safe condition for all who had duties to perform on the poles; and this duty could not be so delegated as to relieve the city of liability for negligence in maintaining the pole in the service for which it was used. If the pole was unsafe for a regular lineman or employee, it was unsafe for the decedent who, though a "superintendent," was performing the service of a lineman or employee when the fatal injury was received; and recovery of appropriate damages is not barred, even if decedent as superintendent of the light and water department of the city had "the duty of looking after poles and wires of the city."

The city charter provides that the city commissioners "shall appoint a City Manager who shall be the administrative head of the municipal government," with authority "to appoint * * * all subordinate officers and employees."

The testimony shows that decedent was appointed by the

City Manager of the defendant city to be "superintendent of the water and light distribution system" of the city. Such position and its duties are not provided for by statute. The City Manager testified that the decedent's duty as superintendent of the water and light distribution of the city was:

"A. To carry on the work of line maintenance and extension work, and also the water distribution system. To carry on improvements and superintend the work, and to hire the men necessary, if not satisfactory to discharge them with my consent.

"Q. Did these duties carry with it the duties of looking after and caring for the poles and wires of the city? A. Maintenance, and in a general way all electrical maintenance except in the power house. He did some work in the power house.

"Q. That carried with it the duty of maintaining and caring for the poles and wires of the city? A. Yes, sir."

There was other similar testimony as to the decedent's authority and duty as superintendent of the water and light distribution system of the city. "The duty of maintaining and caring for the poles and wires of the city," does not necessarily include an accepted duty on the part of the plaintiff's decedent to keep the poles in a safe condition for those whose duty it is to climb the poles with spurs. The master has that duty to perform.

The testimony shows that decedent was employed by the City Manager and was subject to his direction in the discharge of duties assigned to him in his capacity as "superintendent of the water and light distribution system" of the city under appointment by the City Manager.

The hazardous occupation statute makes the employers covered by the statute liable for injuries to "and from the

death of their agents and employees caused by the negligence of such (employers), their agents and servants, unless such (employers) shall make it appear that they, their agents and servants have exercised all ordinary and reasonable care and diligence."

Plaintiff's decedent was an agent or employee of the defendant ciity, and it is' not shown that the defendant city "exercised all ordinary and reasonable care and diligence" to maintain its line pole in safe condition for the hazardous service in which it was used. Even if some responsibility for looking after the condition of the pole was conferred upon and assumed by the decedent, and even if decedent may be regarded as negligent in going upon the pole, this did not relieve the city of the consequences of its negligence in performing its duty to maintain the pole in a reasonably safe condition for the hazardous service; and the negligence of the city being shown and the decedent not having assumed the risk of the city's negligence, there may be a recovery of damages to be diminished in proportion to the negligence, if any, of decedent, it not being shown that the injury was "caused by" decedent's "own negligence." Sections 7059 (4972)-7061 (4974) C. G. L.

In Atlantic Coast Line R. R. Co. v. Ryland, 50 Fla. 190, 40 So. 24, and other cases cited for the city, the controlling statute and essential facts were quite unlike those considered in this case. See City of Sebring v. Avant, 95 Fla. 960, 117 So. 383.

In granting a new trial the court assumed that the evidence showed, even as against the verdict found, that the plaintiff's decedent "was entrusted by the master (city) with the duty and responsibility of maintaining a reasonably safe place for himself and others to work upon," and that deceased "breached this duty, by reason whereof he

was killed"; and the court held "that consequently the verdict is contrary to the law and the manifest weight of the evidence, and the verdict should be set aside and a new trial granted." The record does not sustain the order granting a new trial upon the ground stated by the trial court. It is not necessary to discuss in detail the assignments of error, all of which have been duly considered.

Section 4615 (2905) C. G. L. provides that on a writ of error to an order granting a new trial the court *"shall review the said order,* and if the cause be reversed, shall direct final judgment to be entered in the court below, unless a motion in arrest of judgment, or for judgment *non obstante veredicto,* shall be made and prevail." Section 4640 (2921) C. G. L. authorizes the appellate court to "direct that a new trial shall be had on all the issues shown by the record or upon a part of such issues only." Section 4637 (2918) C. G. L. provides that the appellate court shall, on writ of error, "examine the record" and "give such judgment, * * * as the court below ought to have given, or as it may appear according to law." (Emphasis supplied.)

One of the grounds for new trial is that the verdict is excessive. This ground is argued by counsel for plaintiff in error who contend that the verdict is not excessive. Upon consideration of the whole record it appears to the court that though liability of the defendant is shown, the verdict is excessive. The order granting a new trial is reversed and the cause will be remanded with directions to grant a new trial only as to the damages to be awarded, unless a remittitur be agreed upon and adjudged, and unless a motion in arrest of judgment or for *non obstante veredicto* shall be made and prevail. Section 4615 (2905) C. G. L. Vining v. American Bakeries Co., 118 Fla. 572, 159 So. 670.

It is so ordered.

ELLIS, P. J., and BUFORD and DAVIS, J. J., concur.

TERRELL and BROWN, J. J., dissent.

BROWN, J. (dissenting).—I regret that I find myself unable to concur with the other members of the court in this case. As I see it, the facts in this case present a defense which could have been made under the general issue; that is, that the death of the plaintiff's husband was due, not to the negligence of the city, but if due to the negligence of anyone, it was due to his own negligence. Thus on page 92 of the transcript, the City Manager testified, not only that he employed Mr. Kirkland to take charge of the light and water departments, which included the duty of looking after the poles and wires of the city, but in that connection the following questions and answers appear:

Q. State whether or not Mr. Kirkland had the duty of replacing a defective pole if one was found in the city?

A. Yes, he had full authority.

Q. Without coming back to you?

A. Yes, no use to come to me with a thing of that sort.

Q. During the time you were City Manager, or during the time Mr. Kirkland was employed by the city as superintendent, did the city buy any electric light poles?

A. Yes, we bought poles.

Q. Do you know whether or not Mr. Kirkland inspected those poles before they were bought or paid for by the city?

A. Yes, he inspected the poles usually before they were unloaded from the car.

Q. It was a part of his duty?

A. Yes, sir.

In Labatt on Master and Servant, Section 899, page 2392-93, it is said:

"The duty of the master to furnish his servants with safe instrumentalities' and appliances for the performance of their work applies to a foreman or superintendent or other vice-principal as well as to a servant without rank or title. Of course, if a vice-principal is injured because of dangerous conditions which it was his duty to provide against, there can be no recovery; but this is on the ground of contributory negligence."

See also Section 1259 of the same work, where it is said that:

"Where the material conditions which cause the injury were produced prior to the time of the accident, by the culpable acts or omissions of the servant himself, he cannot be permitted to maintain an action for damages."

Numerous cases are cited under this section. In 39 Corpus Juris, 855, it is said:

"Where by the terms of the employment or by reason of the nature of the work, the servant is charged with the duty of inspecting the machinery, appliances, or places of work which he is using, or with the duty of both inspecting and repairing them, he cannot recover for injuries sustained because of defects in such machinery or appliances or places of work if he neglects his duty in this regard, and if the defects are such as are discoverable by proper inspection."

A large number of cases are cited in support of that proposition.

Of course, if the defects are such as are not "discoverable by proper inspection," neither the employee upon whom the duty of inspection was placed, nor his employer, would be guilty of negligence. The rule defining the nature and extent of the master's obligation with respect to the condition of the agencies of his business may be stated in its most general form as follows: "The degree of care re-

quired of an employer in protecting his employees from injury is the adoption of all reasonable means and precautions to provide for the safety of his servants while in the performance of their work. What shall be deemed 'due care' is to be 'estimated on a consideration of the facts of each particular case.' It is 'such care as reasonable and prudent men use under similar circumstances.' " Labatt on Master and Servant, Section 906. See also 18 R. C. L. Section 135.

As stated in the majority opinion, this action was brought under what is known as the hazardous occupation statute, Section 7058-7063, Comp. Gen. Laws. Section 7067 expressly provides:

"The persons, firms and corporations mentioned in Section 7058 shall not be liable in damages for injuries to their agents and employees, or for the death of such agents and employees, where same is done by their consent, or is caused by their own negligence."

I agree that the last clause above quoted, "caused by their own negligence" means that the negligence of the employee must be the *sole* proximate cause of his injury or death in order to absolve the employer for all liability in damages. The subsequent portion of the same statute shows this, because it provides that where the employer and employee are both at fault, there may be a recovery, but the damages shall be "diminished or increased by the jury in proportion to the amount of default attributable to both." Then follows a proviso which is not material here.

It is true that Mr. Kirkland, as superintendent, or foreman, could have ordered one of his lineman to ascend the pole in question, but I cannot see that because he chose to do it himself, that this had any effect on the city's liability. If the city knew or should have known of the defective condition of the pole, certainly its employee whose duty it

was to inspect the poles and keep them in good condition for the city, and for the protection of its linemen, either knew or ought to have known of the condition of this particular pole, if anybody could have known it, and certainly he did not lose that knowledge merely because he chose to ascend the pole himself instead of ordering one of his men to do it.

While the evidence is not as strong and clear as it might be on the question as to whether or not it was Mr. Kirkland's duty to inspect the poles and keep them in safe condition for the use of the city's linemen, who were constantly compelled to ascend various poles at different times, I think the evidence along this line was sufficiently strong to authorize the lower court to make the order granting the new trial. It is well settled that when the Circuit Judge grants a new trial in a case that has been tried before him, this Court will not reverse such order where no abuse of discretion is shown, and I think there is no abuse here.

The legal principles above mentioned are supported by Atlantic Coast Line R. Co. v. Ryland, 50 Fla. 190. 41 So. 24; Long v. Pughsley, 80 Fla. 278, 85 So. 664; Director General of Railroads v. Bradneis, 83 Fla. 273, 91 So. 113; M. F. Comer Bridge & Foundation Co. v. Shearan, 119 Fla. 543, 161 So. 60; Mobile Electric Co. v. Sanges, 169 Ala. 341, 53 So. 176; Ann. Cases, 1912 B. 461.