## OLDS v. TOWN OF BELLEAIR.
### No. 152.

District Court, S. D. Florida.

Oct. 22, 1941.

Giles J. Patterson, of Jacksonville, Fla., and Phillips & Thompson, of Clearwater, Fla., for plaintiff.

Mabry, Reaves, Carlton & White, of Tampa, Fla., for defendant.

BARKER, District Judge.

█ This cause coming on before me this 8th day of September, 1941, for trial of the issues of fact and law presented by the pleadings, pursuant to the opinion and order of the Fifth Circuit Court of Appeals of the United States rendered on the 2nd day of June, 1941, 120 F.2d 492, and the parties hereto having waived trial by jury, this Court, in accordance with Rule 52 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, hereby find the facts specially and states separately its conclusions of law thereon, and its order for the entry of an appropriate judgment.

### Findings of Fact.

I. Plaintiff, R. E. Olds is a citizen of the State of Michigan; Defendant, Town of Belleair is a municipal corporation organized and existing under and by virtue of Chapter 10335 of the Sp. Acts of Florida 1925, and is successor to the former Town of Belleair Heights which was incorporated by Chapter 9686, Special Laws of Florida 1923, and the amount in controversy is in excess of $3,000 exclusive of interest and costs.

II. Defendant by its answer admits that all obligations of the Town of Belleair Heights were by Chapter 10335 made obligations of the Town of Belleair, defendant.

III. In 1924, the Town of Belleair Heights issued and sold bonds of said Town designated "Public Improvement Bonds", dated July 1, 1924, in the aggregate par value amounting to $300,000. By each of said bonds the Town of Belleair Heights promised to pay to bearer the principal sum of $1,000 with interest from date at the rate of 6 percent, and pledged its full faith, credit and resources. Each bond recited that it was one of a series issued for the purpose of providing funds for the construction of wharves, ship channels, parks, drives and boulevards; that it had been issued pursuant to the affirmative vote of a majority of the electors of said Town qualified to vote on the question, voting at an election duly called and legally held for that purpose; that it was issued pursuant to and in compliance

with ordinances of the Town and with the laws and Constitution of Florida. The Circuit Court of Pinellas County on July 28, 1924 entered an order validating said bonds.

IV. On July 1, 1924, the Town Commissioners of the Town of Belleair Heights sold said bonds to D. G. Denison & Company for the sum of $960 for each $1,000 bond, or a total purchase price of $288,000. The purchaser paid the said sum of $288,-000 to the Town, and the money so received by it was deposited in a special fund known as "Public Improvement Bond Fund".

V. With the proceeds derived from the sale of said bonds, the Town constructed certain improvements, consisting of a concrete bulkhead or sea wall extending along the entire water front in the Town facing Clearwater Harbor and a fill behind the same (except a portion at the north end which had been previously sea-walled and filled by an owner of abutting property), the dredging of a yacht basin and of channels leading to the same, the deepening of the water front adjacent to the bulkhead or sea wall, an island with an area of —— acres, and a bridge from the mainland to the island, together with certain other work incidental thereto, pursuant to plans and specifications which had been prepared by engineers and architects employed by the Town. The plans and specifications show that the bulkhead or sea wall was constructed in the waters of Clearwater Bay, usually called Clearwater Harbor, below the high-water mark or line at an average distance of approximately 50 feet from the natural line of the shore or bluff; that the area between said retaining wall or bulkhead and the natural shore line was filled with material dredged from the bottom of the bay or harbor; and that the island was constructed by dumping of the material which was dredged from deepening of the harbor and the construction of a yacht basin and channel 9 feet deep.

VI. The Town also constructed a paved street or roadway extending from Coe Road near the northern boundary of the Town to the bridge from the mainland to the island, parallel and adjacent to the bulkhead or retaining wall across lands of the Bellevue-Griswold Hotel Company, and began construction at the southern boundary of said Town of an entrance way from River Boulevard (a paved street) to the lower or filled level by cutting down the bluff at that point. It was originally intended to connect with the promenade that was to the back of the sea wall.

VII. Prior to the construction of the improvements, E. E. Carley, who was the Mayor-Commissioner of said Town, and who was also Vice-President and Manager in Charge of the Bellevue-Griswold Hotel Company which owned a large part of the property fronting the harbor, verbally proposed to dedicate a strip of land along the waterfront of sufficient width to enable the Town to construct a boulevard or parkway along the waterfront from the north end of the Town to the south end. At a meeting of the Board of Commissioners in September, 1924, before construction was begun, the Town Commissioners, including Carley, Vice-President of the Hotel Company and Mayor-Commissioner, adopted the following resolution:

" * * * That the proposition of Bellevue-Griswold Hotel Company be accepted to dedicate certain water front along their property to the Town of Belleair Heights for park purposes only and that the Town of Belleair Heights have jurisdiction and authority over said parks and yacht basin, waterway and dockage, and that in consideration of the Bellevue-Griswold Hotel Company dedicating such property for park purposes, the Town would agree to deposit all surplus dredged from the yacht basin at any place designated by the proper officers of the Bellevue-Griswold Hotel Company as shown on a map exhibited to the Commissioners and passed upon by the United States Government, and that the Town Attorney be authorized to draw contract in accordance with said agreement and present to this Commission for ratification and signing at any regular or special meeting," and instructed the City Attorney to prepare the necessary documents. No such documents were ever prepared. The map shows that the dredging was to be deposited upon the island and between the retaining wall or bulkhead and the line of the shore along the entire waterfront of said Town, except a short space where a retaining wall or bulkhead had already been constructed.

VIII. After the construction of these improvements, the Hotel Company closed the road or street leading from Coe's Road to the bridge by erecting a fence across the same. The Town protested, but

later, in 1928, entered into an agreement with the Hotel Company for the settlement of the controversy resulting therefrom, by the terms of which the Hotel Company in consideration of the Town waiving all claims in and to any improvements made by it in front of the Hotel Company's property and paid for from funds derived from the sale of the bonds, agreed that it would pay the Town interest at the rate of 6 percent per annum on the sum of $233,010.74, and also the sum of $1,882 annually, in order to refund to the Town the proportionate part of the interest which the Town had already paid on said bonds, and would further, beginning the year 1934, deposit with the Town a sum of not less than 3 percent of the total proportionate part of the bond issue of $300,000 as determined by said contract, plus any expenditures made for further improvements. The Hotel Company was also given the right to expend an additional sum of $41,393.26 in further improving the waterfront adjacent to the Company's property in sums not to exceed one-fourth of said amount in any one calendar year, and to deduct the amount so expended by it from the current taxes due the Town by the Company for the year in which the expenditure was made, said amounts when expended by the Hotel Company to be added to the principal sum of $233,010.74, all of which was to be paid to the Town by the Company with interest at 6 percent per annum as above stated.

IX. Of the sum of $288,000 received by said Town from the sale of "Public Improvement Bonds", $254,745.64 was disbursed by the Town for the construction of the above described improvements before it entered into its contract with the Hotel Company in 1928. Thereafter, $3,648.12 was expended by it for the same purposes, and there was allowed as credits on the Hotel Company's taxes after 1928 for construction of improvements to the waterfront in accordance with its contract with the Town, $23,212.03. The total amount expended on said improvements was $281,605.79. The balance of the proceeds received by the Town from the sale of the bonds amounting to $6,294.21 was advanced by the Town to the account of its "Paving Assessment Sinking Fund."

X. The Bellevue-Griswold Hotel Company after the execution of its contract with the Town dated June 1, 1928, paid to the Town the sums due in accordance with the terms of their agreement, said payments being made annually and aggregating the sum of $49,982.86. In 1932, the holder of the first mortgage upon the Hotel property instituted proceedings to foreclose its mortgage, and the property of the Hotel Company was thereafter sold by a decree of this Court in that foreclosure proceeding. The said mortgage antedated the said bond issue and in the foreclosure decree the Court held that the rights of the Town were inferior to the rights of the mortgagee, and the property was sold and conveyed under said foreclosure for less than half of the amount of the decree and accumulated interest.

XI. Plaintiff, R. E. Olds, in September, 1924, purchased $100,000 par value of the "Public Improvement Bonds" issued by the Town of Belleair Heights, dated July 1, 1924, from D. G. Denison & Company at a price of 101½ for each $1,000 par value thereof, paying therefor a total of $101,500. The evidence shows that of the 100 bonds so purchased by him, 20 were purchased for the account of his wife, Mrs. Metta U. Olds, 10 for the account of his daughter, Mrs. Bernice O. Roe, and 10 for the account of his daughter, Mrs. Gladys O. Anderson, and these parties are now and have been ever since such purchase owners respectively of said bonds. This suit was brought by R. E. Olds in his name on behalf of himself, his wife and his daughters, all of whom are citizens of the State of Michigan. The Town paid interest upon the bonds owned by R. E. Olds, his wife and his daughters at the rate of 6 per cent per annum up to and including the interest due upon them July 1st, 1932, but has paid nothing since that date.

XII. R. E. Olds appeared and became a party defendant in the case of Alvord v. Olds et al. in the Circuit Court of Pinellas County, Florida, in which case a final decree was entered holding that all the "Public Improvement Bonds" of the Town of Belleair Heights dated July 1, 1924 were void ab initio.

## Conclusions of Law.

The Court herewith states separately its conclusions of law based upon the foregoing findings of fact:

1. The Town of Belleair Heights was a municipal corporation incorporated by Chapter 9686, Special Laws of Florida,

1923. By its Charter, and by the general laws of Florida, the Town of Belleair Heights was specifically given the power to provide for the building, construction and erection of docks, wharves or slips, and the regulation, control and maintenance of the same, the construction, grading and improving of streets and avenues, public wharves or slips, landings, bridges, and the establishment of dock lines, sidewalks and curbing, to fix and establish grades of streets, avenues and thoroughfares, and in addition to have the power and perform all the duties imposed upon it by the laws of Florida then in force, or which might be thereafter enacted, and have the powers and perform all the duties conferred and imposed upon them by general laws providing for the government of cities and towns. It was specifically given power to purchase, receive and hold real property for public parks and promenades, for wharves and docks, and for any public purpose that the Town may deem necessary and proper, and to sell or otherwise dispose of such property for the benefit of the Town to the same extent as natural persons may. By the general law, the Town was authorized to do and perform all such other act or acts as shall seem necessary and best adapted to the improvements and general interest of the Town. These provisions empowered the Town to make the said improvements.

2. By its charter and by the general law of Florida, the Town of Belleair Heights was given the power to issue and sell bonds for the purpose of constructing public municipal improvements, "Provided, such issue and sale of bonds shall be ratified by a majority of the qualified electors of said town who are tax payers and who paid taxes on their own property in the town of Belleair Heights assessed and levied for the calendar year prior to that in which said election is held and actually voting at an election to be held for that purpose". Sp.Acts Fla.1923, c. 9686, § 44.

3. The Town of Belleair Heights attempted to exercise the powers granted to it to issue bonds for the construction of the proposed public improvements, and held an election for the purpose of submitting to the qualified electors of the Town who were taxpayers, the question of issuing said $300,000 "Public Improvement Bonds" for the purpose of constructing the improvements provided for in the plans and specifications prepared by said Town, and a majority of the electors voting at said election did approve said issue. Subsequently, the Circuit Court of Pinellas County by decree dated July 28, 1924, entered a decree validating and confirming the issuance of said bonds, but in the case of Olds v. Alvord, 139 Fla. 745, 191 So. 434, 443, the Supreme Court of Florida held: "under the statute the power of the Municipality to issue bonds did not accrue or exist prior to January, 1925, and by the terms of the statute the Municipality was denied the power until such time it became possible to hold an election under the terms of the Statute. * * * The power to issue bonds not having been attained, the bonds were void ab initio."

4. All of the improvements constructed by the Town were upon the foreshore of the waters of Clearwater Bay, or within such waters, and were all constructed upon public property, and all of the money expended by the Town was for the construction of said improvements, or for services incidental to the construction of the same, and the actions of the Town authorities in issuing said bonds with which to obtain funds for the construction of said improvements were apparently taken in good faith, in the belief that they were authorized so to do by and in compliance with the provisions of the City Charter and the laws of the State of Florida, and that the Hotel Company had in good faith agreed to dedicate its waterfront to the Town and to give it jurisdiction and authority over the same, especially as the officials of the Town were given no notice to the contrary until after the improvements had been substantially completed.

5. The Court finds as a matter of law that the purchase of said bonds by plaintiff, R. E. Olds, for his account and for the account of the members of his family, was for a valuable consideration and in good faith.

6. The Court finds as a matter of law that the Town, having issued and sold said bonds under the circumstances enumerated, and having received from the sale of the same the sum of $288,000 and there being no evidence of fraud or wrongdoing on the part of the officials of the Town, or of the plaintiff herein, and the Town having received from the sale of said bonds $960 in cash for each $1,000 bond so sold, and having expended the proceeds received by it from the sale of

said bonds in the construction of public municipal improvements, the plaintiffs herein, as owners of said bonds, are entitled to recover from the Town the sum of $960 per bond for each bond held by them respectively.

7. At the hearing, the evidence offered by the plaintiff showed that although he had instituted the suit in his own name on behalf of 100 bonds so purchased by him, he was actually the owner of 60 of said bonds, and 20 of them were owned by his wife, Mrs. Metta U. Olds, 10 by his daughter, Mrs. Gladys O. Anderson, and 10 by his daughter, Mrs. Bernice O. Roe and Clarence S. Roe, her husband. The plaintiff having been granted leave to add the names of these persons as parties plaintiff, the Court finds that plaintiff, R. E. Olds, is entitled to recover from the Town the sum of $57,600; that Mrs. Metta U. Olds, his wife, is entitled to recover from the Town the sum of $19,200; that Mrs. Gladys O. Anderson is entitled to recover from the Town the sum of $9,600; and that Mrs. Bernice O. Roe and Clarence S. Roe, her husband, the sum of $9,600; because the bonds owned by them were the bonds described in the original complaint filed by the said R. E. Olds, and this suit was instituted in their behalf and the claim for which judgment is entered is upon the same bonds as those described in the original complaint.

Wherefore, it is ordered that judgment for the plaintiffs be entered accordingly, and that plaintiffs have the cost of this suit.